# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANAHUAC MANAGEMENT,                      )
                                          )
                          Plaintiff,      )        Case No.  2:09-cv-01590-RLH-PAL
                                          )
vs.                                       )        **ORDER**
                                          )
KEITH A. MAZER, *et al.,*                 )        (Emg Mot Quash - Dkt. #44)
                                          )        (Mot Deem Matters Admitted - Dkt. #50)
                          Defendants.     )
_____)

The court conducted a hearing on June 29, 2011, on Third Party Defendant Jehu Hand's Emergency Motion to Quash Subpoenas, or in the Alternative, for Protective Order (Dkt. ##44, 45), which was filed as an "emergency motion".  The court has considered the Motion, Defendants/Third Party Plaintiffs' Opposition (Dkt. ##45, 48), Third-Party Defendant's Reply (Dkt. #46), and the arguments of counsel at the hearing.  During the hearing, counsel for the Defendants strenuously argued that the Motion to Quash was part of a concerted strategy by Hand to resist appropriate discovery which Defendants had raised in another discovery motion filed after this one.  The court inquired when briefing on the additional motion would be completed,  continued the hearing on the Motion to Quash until August 4, 2011, at 10:30 a.m., and reserved ruling on the Emergency Motion to Quash.

The court has considered Defendants' Motion to Deem Matters Admitted or Order Jehu Hand to Serve Amended Answers to Request for Admissions (Dkt. #50), Anahuac Management and Third-Party Defendant Jehu Hand's Opposition to Defendants' Motion (Dkt. #52), Defendants' Reply (Dkt. #55) and the arguments of counsel at the hearing conducted August 4, 2011.

## BACKGROUND

The Complaint in this case was filed in state court and removed (Dkt. #1) August 21, 2009.  Plaintiff has asserted claims for securities fraud in violation of SEC Regulation 10(b) and Rule 10(b-5), fraud in violation of SEC Regulation 17(a), and state claims for fraud, negligent misrepresentation,

breach of fiduciary duty, conversion and breach of contract.  Plaintiff Anahuac Management ("Anahuac") alleges Defendant Keith A. Mazer ("Mazer") and his alleged alter ego World Capital Funding, LLC ("WCF") induced it to purchase 1,573,333 shares of Cleantech Biofuels, Inc. ("Cleantech") for $211,067.00.  However, Mazer/WCF did not deliver the shares and converted them to their own economic benefit.

## I.   Emergency Motion to Quash (Dkt. #44)

On May 24, 2011, Defendants served subpoenas issued by the United States District Court for the Northern District of Illinois to Wells Fargo and Bank of America to obtain banking records of Third Party Defendant Jehu Hand ("Jehu"), and Hand & Hand, P.C., his law firm.  Hand filed an emergency motion because the Bank of America advised counsel that it had received the subpoena served on it and intended to comply with it by producing responsive documents on June 6, 2011.  The court reviewed the motion and entered an Order (Dkt. #47) establishing a briefing schedule and a temporary protective order precluding the Defendants/Counterclaimants/Third-Party Plaintiffs Mazer and WCF from obtaining and/or using documents subpoenaed from Wells Fargo and Bank of America pending a decision on the merits.

In the current motion, the movants seek to quash the subpoenas asserting they were improperly issued by the United States District Court for the Northern District of Illinois because counsel for Defendants have law offices in Chicago, Illinois.  The bank accounts at issue were opened and held in the State of California, and the Northern District of Illinois has no connection with this lawsuit.  Additionally, Hand seeks to quash the subpoenas issued to Hand and non-party Hand & Hand, P.C. because the subpoenas seek confidential banking records for a five-year period from 2004 to 2009 which are not relevant to this dispute, especially in light of the District Judge's order granting Anahuac's Motion to Dismiss Count II of Mazer's Third-Party Complaint.  Hand recognizes that generally a motion to quash subpoenas issued in another district should be enforced by the district court that issued them.  However, this line of cases does not alter this court's broad discretion to control discovery in this case.  Requiring the parties to pursue a motion to quash in Illinois because the subpoenas were issued there would unduly burden Hand, and serving the subpoenas in Illinois is the type of gamesmanship that this court should not sanction.

1    Hand argues that although bank records, if relevant, may be discoverable, they are private and

2    deserving of protection.  The subpoenas issued to Bank of America and Wells Fargo seek bank records

3    of Hand and his law firm for a five-year period which is chronologically over broad as the claims

4    involved in this lawsuit involve a single set of facts involving stock share transactions in 2007.  Hand

5    argues that if Defendants intend to use the bank records to argue that Anahuac did not pay for the shares

6    in question, "then the Subpoenas are non-starters."  Plaintiff bears the burden of proving every element

7    of its claims.  Payment is an element of the claim, and if it cannot prove payment "Defendants' case

8    will not get any stronger by combing through Hand's personal bank records or Hand & Hand, P.C.'s

9    bank records for evidence of non-payment."  Hand also argues the bank records are irrelevant to any of

10   Mazer's remaining counterclaims for breach of contract to pay for consulting services, and unjust

11   enrichment.  If the court is not inclined to quash the subpoenas, Hand requests a protective order

12   finding the confidential bank records are not reasonably calculated to lead to the discovery of

13   admissible evidence and forbidding any discovery of them.  Finally, if the court is not inclined to forbid

14   any discovery of the confidential bank records, Hand requests that the record be "kept from the public."

15   Mazer opposes the motion[1] and argues that the motion to quash is meritless because under Rule

16   45(c) the motion must be filed in the issuing court, not this court.  Mazer acknowledges that this court

17   has the authority to issue a protective order, but argues that Hand, as the moving party, must show good

18   cause which he has failed to do.  Mazer also argues that Hand did not satisfy the letter or spirit of the

19   meet-and-confer requirements which impose an obligation to engage in personal consultation before

20   filing a discovery motion seeking judicial intervention.  On the merits, the motion does not establish a

21   good cause to "forbid discovery" of the bank records sought by the subpoena.  Although the court has

22   discretion to impose specifically narrow protections that would be appropriate to address any legitimate

23   confidentiality concerns, Hand has not satisfied his burden of establishing such concerns.

24   Mazer argues that there is nothing improper about issuing subpoenas in the jurisdiction where

25   the subpoenaed parties and lead counsel are all present.  As the party moving for a protective order,

26

27   [1]The court's Order (Dkt. #47) was not electronically docketed until June 9, 2011.  The court was
     not aware at the time the order was prepared that Mazer had already filed a Response (Dkt. #45).

28   Unfortunately, this caused the parties to file another round of briefs.

1   Hand has the burden of establishing good cause.  Relevancy is construed broadly under the Federal

2   Rules and Hand has not met his burden of establishing the bank records are not relevant.  He "also

3   mischaracterizes and marginalizes the issues in this case."  Documents and deposition testimony

4   secured recently establish "a direct and immediate relevance connection between the records and the

5   issues and allegations in this case."  Specifically, the bank records are relevant to Mazer's

6   counterclaims and Third Party claims based on allegations Hand owes significant amounts to Mazer

7   from various dealings between the parties over the years.  Mazer claims that he has sent over

8   $1,000.000.00 to Hand over the years, and that Hand deposited the money into his client-trust account.

9   Thus, the bank records will shed light on additional allegations showing the magnitude of Hand's debt

10  to Mazer, and that he failed to contribute 50% of the total amounts required to construct a house Hand

11  and Mazer were building in Antigua.  The bank records will show that Hand's debt included

12  deficiencies in the amounts he contributed, from his client-trust account, to the construction of the

13  Antigua house.  These allegations are the core of Mazer's pending breach of contract and unjust

14  enrichment claims.

15         Plaintiff Anahuac answered an interrogatory which admits, in describing payment for Cleantech

16  shares, that it paid $211,607.00 in a wire to Cleantech Biofuels, Inc. from the client-trust account of its

17  counsel, Hand & Hand on March 14, 2008.  Thus, there is no doubt that Cleantech's stock at issue was

18  purchased from funds from Hand's client-trust account, and Mazer is entitled to the account statement

19  that would substantiate Plaintiff's admission.  Mazer also claims it is entitled to all of the requested

20  client-trust account statements on March 14, 2008 "in order to see and tell the full story regarding the

21  payment of Anahuac's Cleantech stock."  Mr. Hand testified at his deposition on June 9, 2011, and

22  Anahuac produced one account statement showing a wire transfer into Hand's client-trust account from

23  "Fangos Consulting, S.A." February 4, 2008.  Hand testified at his deposition that this wire transfer

24  constituted the "Dana Resources" funds that went towards the purchase of Anahuac's Cleantech stock.

25  Defendants are not obligated to accept Hand's position on its face, and are entitled to test that position

26  by reviewing Hand's accounts to identify whether the funds were deposited by Mazer and other sources.

27  Discovery has also shown Hand's practices of co-mingling funds into his client-trust account which

28  make discovery of client-trust account statements critical.  Mazer points out that Hand was Plaintiff's

4

counsel, and as such, Defendants are entitled to discover his client-trust accounts to secure relevant evidence showing that Plaintiff's purchase of Cleantech stock was unlawful, and therefore, not actionable. Mazer argues the bank records are relevant to his alter-ego allegations that Hand used Anahuac as his alter ego. Review of the bank records will show that Hand funneled amounts into and out of his bank and client-trust accounts for Anahuac's purposes although the funds were his own.

Finally, Mazer argues that even if Hand has a legitimate confidentiality concern about the contents of the bank records, they can be appropriately addressed and resolved with a limited protective order rather than a broad protective order precluding discovery of the records at all.

Hand replies that Anahuac derives its seven claims from, more or less, a single set of facts arising out of a 2007 offer to sell certain shares of stock. Defendants' surviving claims involve accusations Hand breached a contract with Mazer in which Mazer agreed to provide consulting services that Hand failed to pay for, or in the alternative, that Hand was unjustly enriched by the benefit of Mazer's consulting services. As these are the "entire universe of claims set to go to trial" the bank records at issue are not relevant or discoverable. Hand argues that he has complied with LR 26-7(b) by faxing a letter to opposing counsel stating his legal position and intention to move to quash the subpoenas. The Defendants responded the next day in a faxed response and the letters were attached to the opposition brief and speak for themselves. At most, defense counsel offered to enter into a protective order to preclude use of irrelevant information, and had no intention of limiting or modifying the subpoenas themselves.

## DISCUSSION

The subpoenas challenged in this motion were issued by the United States District Court for the Northern District of Illinois and served on Wells Fargo and the Bank of America in the Northern District. Hand acknowledges that a subpoena issued pursuant to Fed.R.Civ.P. 45 must ordinarily be challenged in the district issuing the subpoena. However, as the Northern District of Illinois has no relationship to this lawsuit, any of its claims, defenses or counter claims requiring Hand to go to the Northern District of Illinois where opposing counsel has law offices would cause Hand to incur unnecessary expense. The court will not quash the subpoenas challenged in this motion, but will exercise its supervisory responsibility over the appropriate scope of discovery in this case pursuant to

Rule 26 and enter a protective order limiting the scope of discovery in this case.

**Motion for Protective Order**

Fed. R. Civ. P. 26(c) permits the court in which an action is pending to "make any order which justice requires to protect the party or person from annoyance, embarrassment, oppression or undue burden or expense" upon motion by a party or a person from whom discovery is sought. The burden of persuasion under Fed. R. Civ. P. 26(c) is on the party seeking the protective order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To meet that burden of persuasion, the party seeking the protective order must show good cause by demonstrating a particular need for the protection sought. *Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id*. (*citing Cipollone v. Liggett*). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that prejudice or harm will result if no protective order is granted." *Foltz v. State Farm*, 331 F.3d 1122, 1130 (9th Cir. 2003) (*citing San Jose Mercury News, Inc., v. District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999)).

Having reviewed and considered the moving and responsive papers and the arguments of counsel, the court finds the two subpoenas at issue are grossly over broad in seeking all of Hand's personal and client trust account banking records for more than a five-year period. The court will exercise its discretion and authority under Rule 26(b)(2)(C) to limit the discovery Defendants may obtain. A protective order is entered precluding the Defendants from reviewing, using or keeping documents already produced by Wells Fargo and Bank of America from Hand's personal bank account. A protective order is also entered limiting the banking records Defendants may obtain from Hand & Hand, PC Client Trust Account for the period between April 2007 and March 2008. As counsel indicate both banks have already complied with the subpoenas as served, and counsel for the parties were ordered to forthwith meet and confer to review documents produced by both banks. Counsel for the Defendants indicated that he had received an envelope of responsive documents from Wells Fargo but had not yet opened it. Counsel for Defendants shall return banking records for Hand's personal account, and shall return all banking records from Hand and Hand, PC's account except for the period between April 2007 and March 2008.

1

**Defendants' Motion to Deem Matters Admitted (Dkt. #50)**

2       This motion asks the court to deem Hand's responses to requests for admissions which were

3   served on May 27, 2011, deemed admitted, or in the alternative, that the court require Hand to serve

4   supplemental responses.  Defendants claim that Hand  unreasonably refused to answer questions posed

5   in the requests for admissions and has interjected boiler plate and baseless objections rather than

6   provide responsive answers.  The motion also seeks an order allowing the Defendants to redepose Hand

7   after the supplemental answers are served, and an award of attorney's fees and costs for the necessity of

8   filing this motion.

9       Plaintiff and Third Party Defendant oppose the motion pointing out that Defendant served 255

10  requests for admissions on Hand.  Identical sets were served on Anahuac which have been answered.

11  Hand served supplemental responses to the requests for admissions based on information provided at

12  the deposition of Yuriy Semenov, Anahuac's sole owner, officer and director.  Thus, this motion is

13  largely unnecessary. Serving a duplicate set of requests for admissions, which have been answered by

14  Anahuac, is also an abusive discovery tactic, especially because the requests for admissions seek

15  admissions of facts relevant to claims that have been dismissed by the District Judge.

16      The Ninth Circuit has recognized that requests for admissions "are sought, first, to facilitate

17  proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by

18  eliminating those that can be." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007).  Rule 36(a)

19  "seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice." *Id*.

20   The goal of requests for admissions is to "eliminate from the trial matters as to which there is no

21  genuine dispute." *People of the State of California v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D.

22  CA. 1955).  For this reason, "requests for admissions are not principally discovery devices." *Safeco of*

23  *America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (*citing* 8A Charles Alan Wright, Arthur R.

24  Miller & Richard L. Marcus, § 2252 at 524-525).  ("Strictly speaking Rule 36 is not a discovery

25  procedure at all, since it presupposes that the party proceeding under it knows the facts or has the

26  document and merely wishes its opponent to concede their genuineness.  A party who desires to

27  discovery what the facts are should resort to other discovery rules rather than Rule 36." ).

28      During oral argument counsel for Defendants repeatedly referred to Hand's deficient "answers"

7

to the request for admissions.  A responding party does not "answer" a request for admission like an answer to an interrogatory.  Rule 36 requires a party receiving a request for admission to admit or deny matter.  The court has reviewed Hand's responses and finds that the set of 255 requests for admissions are directed to obtaining discovery more typically obtained through answers to interrogatories.  These disputed requests for admissions are clearly designed to obtain discovery, rather than admissions of non-disputed facts, or the genuineness of documents.  Accordingly, the motion will be denied.

For the reasons stated,

**IT IS ORDERED** that:

1.    Third Party Defendant's Emergency Motion to Quash (Dkt. #44) is **DENIED**.  However, a protective order is entered as set forth in the body of this order.

2.    Defendants' Motion to Deem Matters Admitted (Dkt. #50) is **DENIED**.

Dated this 11th day of August, 2011.

Peggy A. Leen
United States Magistrate Judge

8