UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANAHUAC MANAGEMENT, a Nevada Corporation,<br><br>                    Plaintiff,<br>  v.<br>KEITH A. MAZER, et al.,<br>                    Defendants. | Case No. 2:09-cv-01590-MMD-PAL<br><br>ORDER<br><br>(Plaintiff's and Third Party Defendant's Joint Motion in Limine – dkt. no. 75) |
| KEITH A. MAZER,<br>                    Counterclaim Plaintiff,<br>  v.<br>ANAHUAC MANAGEMENT, a Nevada Corporation,<br>                  Counterclaim Defendant. | |
| KEITH A. MAZER,<br>                  Third-Party Plaintiff,<br>  v.<br>JEHU HAND,<br>                Third-Party Defendant. | |

Before the Court is Plaintiff Anahuac Management ("Anahuac") and Third-Party Defendant Jehu Hand's (collectively, "Movants") Motion in Limine. (Dkt. no. 75.) For the reasons set forth below, the Motion is denied.

I.  **BACKGROUND**

This is a contract and securities dispute involving Keith Mazer and World Capital Funding, LLC ("WCF") (collectively "Defendants") against Anahuac and its corporate counsel, Jehu Hand.  Anahuac initially brought suit, alleging that in 2007, Mazer, acting on behalf of World Capital, contacted Anahuac's president Yuri Semenov to discuss purchasing a convertible debenture[1] (the "Debenture") issued by a company that would later merge with Cleantech Biofuels, Inc. ("Cleantech").  Semenov allegedly agreed to Defendants' proposal and subsequently purchased the Debenture.  Semenov then converted the Debenture into common stock and requested the stock from Defendants.  However, according to Anahuac, Defendants never intended to give possession of the stock to Anahuac and now seek "stock power" allowing Defendants to transfer the shares to a third person without ever giving them to Anahuac or compensating Anahuac.

In their counterclaims, Defendants allege that Mazer and Hand participated in at least two joint ventures and other matters and that Hand currently owes Mazer a substantial amount of money.  Allegedly, because Hand could not pay this debt, Hand retained Mazer to consult on the purchase of the Cleantech stock and Mazer actually paid for the purchase of the stock.  Hand and Anahuac, however, never compensated Mazer for his service.

On December 29, 2008, Anahuac filed suit in Nevada state court against Defendants.  Defendants subsequently removed the case to this Court on the basis of federal subject matter jurisdiction. On November 11, 2009, Anahuac filed an Amended Complaint (dkt. no. 11), alleging claims for: (1) fraud in violation of 15 U.S.C. § 78(j) ("SEC Rule 10b-5" or "Rule 10b-5d"); (2) violation of the Nevada Uniform Securities Act, NRS §§ 90.310 and 90.570, 90.610; (3) fraud; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) conversion; and (7) breach of contract.  On September 16,

---

[1] The parties agree that "debenture" in this case refers to a loan instrument, which may be converted into equity, or shares, of the issuing Company's stock. (Dkt. no. 67 at 3.)

2

2010, Defendants filed their Answer (dkt. no. 25), which included Mazer's counterclaims against Anahuac and third-party complaint against Jehu Hand. Mazer alleged claims for: (1) breach of contract; (2) setoff; and (3) unjust enrichment.

On May 6, 2009, Mazer filed suit in Antigua and Barbuda (the "Antigua Suit") against Hand related to the debts Mazer alleges Hand owes him. As it relates to this case, Mazer sought setoff in his third-party complaint of the debt being adjudicated in Antigua against any recovery by Anahuac in this case, claiming that Hand operates Anahuac as his alter ego and, therefore, the Court could reverse-pierce the corporate veil to attribute Hand's alleged acts and debts to Anahuac the corporate entity. The Court dismissed Mazer's setoff claim because Mazer failed to adequately allege the alter ego claim. (Dkt. no. 38.)

A bench trial in this case is scheduled to begin on November 27, 2012. Movants request that the Court exclude several documents Defendants plan to present at trial, arguing that the documents are irrelevant because they are related to Defendants' dismissed setoff claim. Defendants claim that the evidence is relevant to their breach of contract and unjust enrichment claims rather than to the dismissed setoff claim.

**II.   DISCUSSION**

Movants seek to exclude several categories of Defendants' documents as either irrelevant under Fed. R. Evid. 401 or substantially prejudicial under Fed. R. Evid. 403. The categories are:

- <u>Documents related to the Antigua dispute, including:</u>
    - A skype transcript between Hand and Mazer;
    - Several e-mails between Hand and Mazer;
    - Turks and Caicos bank statements;
    - An agreement dated April 2, 2008;
    - Invoices, payments, or accounting related to the Antigua home made between July 18, 2007, to March 2008 (dkt. no. 75-7);
    - An account ledger showing amounts purportedly spent on the Antigua home; and
    - Antigua litigation documents.

- <u>Documents related to other transactions involving Hand and Mazer, including:</u>
    - Brokerage account statements and trade confirmation of Hiawatha Development Corporation ("HDC"), a corporation allegedly

- controlled by Hand. These documents set forth financial transactions in 2004 and 2005 by HDC with respect to its sale of common stock of several public companies; and
  - Documents relating to other litigation between Mazer and Hand.
- <u>Several Cleantech documents that Movants assert are unrelated to this case, including:</u>
  - A letter from Stan Medley regarding Note Purchase and Sale Agreement of a shell company, Long Road Entertainment, which was a predecessor to Cleantech Biofuels, Inc.; and
  - A letter from Stinson regarding Note Purchase and Sale Agreement; and
  - Hand & Hand Client Trust Account statements, reflecting a wire received from Gillette International, Ltd. in April 2007 in the amount of $250,000 and the corresponding bank statement of Gillette International, KM 54 and 55, and the transmittal of this amount to Cleantech's law firm as payment for the Debentures purchased by Trinity Enterprises, LLC.
- Movants also assert that in-court testimony regarding any of the above is inadmissible under Fed. R. Evid. 401 and 403.

As stated, Movants argue that all of the above documents relate to the dismissed setoff claim and are therefore irrelevant, while Defendants argue that the evidence is relevant to either their breach of contract claim, unjust enrichment claim, or a defense to one of Anahuac's claims.

The Court declines to rule on the admissibility of the above-referenced evidence at this time. The term "in limine" means "at the outset." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citing Black's Law Dictionary 803 (8th ed. 2004)). "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *Id.* (citation omitted). "In the case of a jury trial, a court's ruling 'at the outset' gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *Id.* at 1111-1112. "Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous." *Id.* at 1112. "It would be, in effect, 'coals to

///
///
///
///

Newcastle,' asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence."[2]  *Id.*

### III. CONCLUSION

IT IS THEREFORE ORDERED that Movants' Motion in Limine (dkt. no. 75) is DENIED.

ENTERED THIS 15th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[2] To "carry coals to Newcastle" is to do or to bring something superfluous. The idiom's origin relates to the fact that Newcastle-upon-Tyne has historically been a major coal-mining city, and the need to "carry coal" to such a city would be unnecessary.